BOWMAN AND BROOKE LLP
Brian Takahashi (SBN: 146505)
E-mail:  Brian.Takashashi@bowmanandbrooke.com
Richard L. Stuhlbarg (SBN: 180631)
E-mail:  Richard.Stuhlbarg@bowmanandbrooke.com
Corinne D. Orquiola (SBN: 226969)
E-mail:  Corinne.Orquiola@bowmananbrooke.com
Amanda S. Depuy (SBN: 320496)
E-mail:  Amy.Depuy@bowmanandbrooke.com
970 West 190th Street, Suite 700
Torrance, California 90502
Tel No:   310/ 768-3068
Fax No:   310/ 719-1019

Attorneys for Defendant
BMW OF NORTH AMERICA, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD BURROWS AND MEAGAN BURROWS;<br><br>Plaintiffs,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.:  2:17-cv-6960-R-RAO**<br><br>**[Assigned to the Hon. Manuel L. Real]**<br><br>**DEFENDANT BMW OF NORTH AMERICA'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' EXPERT DAN CALEF; DECLARATION OF AMANDA S. DEPUY**<br><br>**Trial:         August 21, 2018**<br><br>**Hearing Date:       September 17, 2018**<br>**Hearing Time:       10:00 a.m.** |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

Defendant BMW of North America, LLC ("BMW NA") hereby moves the Court for an order Excluding Plaintiffs' Expert Dan Calef (hereinafter "Calef") from testifying at trial under Daubert.

This Motion is made on the following grounds:

1.     Calef's opinions are not supported by scientifically valid reasoning, methodology, testing or peer review. Thus, Calef's opinions are

1   unreliable and do not meet the gatekeeping criteria of <u>Daubert v.</u>

2   <u>Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993); <u>Kumho Tire Co. v.</u>

3   <u>Carmichael</u>, 526 U.S. 137 (1999); and Rule 702 of the Federal Rules

4   of Evidence.

5   2.   Calef is unable to scientifically establish a link between any allegedly

6   defective components of the subject vehicle and Plaintiffs' concerns.

7   Calef never even drove the subject vehicle. Consequently, his

8   testimony has no probative value. The value of such testimony is thus

9   substantially outweighed by its prejudicial and harmful effects.

10   BMW NA sought to meet and confer with Plaintiff on July 30, 2018.

11   DATED:  August 15, 2018                          BOWMAN AND BROOKE LLP

12

13                                    BY:   */s/     Amanda S. Depuy*
14                                            Brian Takahashi
                                             Richard L. Stuhlbarg
15                                            Corinne D. Orquiola
                                             Amanda S. Depuy
16                                            Attorneys for Defendant
                                             BMW OF NORTH AMERICA, LLC

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................8

II.   FACTS .....................................................................................8

      A.    Calef's Background ......................................................8

      B.    Calef's Expert Report ..................................................9

            1.    The Subject Vehicle Experienced A List a Problems
                  and the Vehicle Contained a Defect that Was Substantially
                  Impairing ...........................................................9

            2.    The Subject Vehicle is still experiencing problems that
                  have not been repaired ....................................10

            3.    The Alleged Problems in the Subject Vehicle are
                  Known Defects. ................................................10

            4.    The Dealer Did Not Make a Reasonable Effort to
                  Diagnose and Repair the Unrepaired Concerns. ...........11

            5.    BMW NA Violated the California Bureau of Automotive
                  Repair Regulations. ..........................................11

            6.    Defendant Was Given a Reasonable Number of Attempts
                  to Repair the "Problems." .................................12

            7.    Each of the "Unrepaired Problems" Was Covered Under
                  Defendant's Warranty. ......................................12

      C.    Dan Calef's Testimony ...............................................12

            1.    Normal Oil Consumption for an N63 engine is 2,500 miles. .......12

            2.    There are NO facts to support Calef's oil consumption. ..............13

            3.    Calef improperly offers design defect opinions ...........................13

III.  ARGUMENT .........................................................................16

      A.    Applicable Law ..........................................................16

      B.    Calef Is Not Qualified to Testify as An Expert In This Case .............17

      C.    Calef's Opinions Are Unreliable and Should Be Excluded................18

        1.   Calef's Relies on "Confidential Documents" but
             Refused to identify or produce these crucial documents. .............19
        2.   Calef's Opinions are Not Based on Reliable Principles
             and Methods. .................................................................................20

IV.   CONCLUSION .................................................................................20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

<u>Bros v. Hewlett-Packard Co.</u>,
  2007 WL 485979 (N.D. Cal., Feb. 12, 2007)......................................................15

<u>Bruce Martin Constr., Inc. v. CTB, Inc.</u>,
  735 F.3d 750 (8th Cir. 2013) ...............................................................................15

<u>Claar v. Burlington N. R. Co.</u>,
  29 F.3d 499 (9th Cir. 1994) ...................................................................... 18, 19

<u>Daubert v. Merrell Dow Pharm., Inc.</u>,
  509 U.S. 579 (1993) ................................................................................. passim

<u>Daugherty v. Am. Honda Motor Co., Inc.</u>,
  144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006) ..............................................15

<u>Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC</u>,
  No. 14-CV-02349-TEH, 2015 WL 5138080 (N.D. Cal. Sept. 1, 2015) ..............15

<u>In re Pioneer Hi-Bred Int'l, Inc.</u>,
  238 F.3d 1370 (Fed. Cir. 2001) .................................................................. 19, 20

<u>In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.</u>
  <u>Liab. Litig.</u>,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010)....................................................... 13, 14

<u>Kumho Tire Co. v. Carmichael</u>,
  526 U.S. 137 (1999) ...................................................................................... 8, 16

<u>Lundy v. Ford Motor Co.</u>,
  87 Cal. App. 4th 472 (2001).......................................................................... 10, 11

<u>McCabe v. Am. Honda Motor Co.</u>,
  100 Cal. App. 4th 111 (2002)...............................................................................14

Metabolife Int'l, Inc. v. Wornick,

   264 F.3d 832 (9th Cir. 2001) ...................................................................16

Mut. Life Ins. Co. of N.Y. v. Frost,

   164 F.2d 542 (1st Cir. 1947) ......................................................... 12, 13

Reg'l Airport Auth. of Louisville v. LFG, LLC,

   460 F.3d 697 (6th Cir. 2006) ...................................................................19

Smelser v. Norfolk Southern Railway Co.,

   105 F.3d 299 (6th Cir. 1997) ...................................................................17

Thomas v. Newton Int'l Enterprises,

   42 F.3d 1266 (9th Cir. 1994) ...................................................................18

Troup v. Toyota Motor Corp.,

   545 F.App'x 668 (9th Cir. 2013) ............................................................15

United States v. Finley,

   301 F.3d 1000 (9th Cir. 2002) ....................................................... 16, 18

United States v. Hankey,

   203 F.3d 1160 (9th Cir. 2000) .................................................................16

United States v. Hermanek,

   289 F.3d 1076 (9th Cir. 2002) .................................................................16

United States v. McCoy,

   539 F.2d 1050 (5th Cir. 1976) .................................................................12

United States v. Mendoza-Paz,

   286 F.3d 1104 (9th Cir. 2002) .................................................................16

Voelker v. Porsche Cars N. Am., Inc.,

   353 F.3d 516 (7th Cir. 2003) ...................................................................15

**Rules**

Fed. R. Civ. P. 26 .................................................................... 19, 20

Fed. R. Civ. P. 26(a)(2) ............................................................19

Federal Rule of Evidence 702 ........................................... 8, 9, 16, 17

Federal Rule of Evidence 704 ...................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' "expert" Dan Calef (more of an advocate than an expert as discussed below) makes a number of claims that have no basis. Such opinions lack even the minimum gatekeeping criteria of <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993); <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999); and Rule 702 of the Federal Rules of Evidence. Furthermore, Dan Calef (hereinafter "Calef") freely admitted during deposition that he has not based his options on any studies, publications, research or anything scientific in nature. Calef's expert report is also riddled with baseless unscientific conclusions. For the foregoing reasons, BMW NA requests that Calef's dubious opinions and uncorroborated testimony be excluded in their entirety.

## II.   FACTS

### A.    Calef's Background

Calef has made a career of testifying in lemon law cases.  His expert report lists 352 lemon law cases for which he has provided testimony.  (See Calef Report, p.20-28, Exhibit "A",) He has worked exclusively as a lemon law consultant since 1998.  (Calef Report, p.17-25, Exhibit "A") His opinions have been disregarded by federal courts in the past.  For example, Federal Judge James V. Selna noted in a lemon law bench trial, <u>Gray v. Mazda</u> (SACV NO. 08-00279-JVS) that:

> "Judging Mr. Calef's demeanor and attitude while testifying, I found him to be an advocate and not an independent professional analyst of the problem that he was asked to address. That was indicated in his demeanor and it was also indicated in the dismissive language he used in expressing his criticisms of the Mazda's experts. He labeled [a defense expert's] opinion "hogwash." He labeled Mr. Butts' testimony, the designer of the -- well, the supervisory designer, if you will, of the sway bar for Mazda, he labeled that testimony as "laughable." That mode of expression and his demeanor were not consistent with the presentation of a independent professional analyst. I also note that his

testimony of experience is heavily weighted to testifying for plaintiffs in lemon law cases."

(See <u>Gray</u> Bench Ruling, 7:11-24, Exhibit "B")

Recently, Federal Judge Stephen V. Wilson excluded Calef in <u>Yi v. BMW</u> (Case No. 2:17-cv-06467-SVW-SK Dkt 92) a case in which he claimed the very same defects in the N63 engine as the present case finding, "First, Plaintiff's expert testimony is not 'based upon sufficient facts or data' for the reasons set forth in the preceding section of this Order.  Fed. R. Evid. 702.  Secondly, Mr. Calef's report falls short of the requirements of Rule 702 by failing to explain what 'reliable principles and methods,' if any, he used to arrive at his conclusions."  (See <u>Yi</u> Civil Minutes, p. 3, Exhibit "D.")

Calef never received any BMW factory training, nor has he ever worked for a BMW dealer or center.  (See Calef transcript, p. 20:11-16, Exhibit "C.")  He never worked on a N63 engine and has no N63 engine training.  <u>Id</u>. at pp. 21:9-17 and 22:9-13.  Calef even initially identified the wrong model engine in the Burrows vehicle at his deposition.  <u>Id</u>. at pp. 20:14-21:21:8.

**B.    Calef's Expert Report**

**1.    The Subject Vehicle Experienced A List a Problems and the Vehicle Contained a Defect that Was Substantially Impairing**

Calef's first opinion is that the Subject Vehicle has experienced various problems including excessive oil consumption. (Calef Report, p.3, Exhibit "A".) Calef bases his opinion on his review of the repair invoices and goes on to summarize them.   This is not an expert opinion at all.   It is simply a list. Additionally, Calef's belief are not based in fact since Calef insist that the repair orders and invoices reflect that Plaintiffs sought repairs for each of these issues *repeatedly* despite many of these concerns having only been presented once, if at all.  Further, Calef never drove the vehicle.

Whether a concern substantially impairs use, value, or safety, is a matter for the jury.  See, Lundy v. Ford Motor Co., 87 Cal. App. 4th 472 (2001).  Moreover, as discussed in this motion, Calef's opinions about the nature of the nonconformities themselves are unscientific and fatally flawed.  Therefore, any opinions built upon them (such as whether a nonconformity is substantial or has been presented an unreasonable number of times for repair) must also collapse.

### 2.   The Subject Vehicle is still experiencing problems that have not been repaired

Calef's second opinion is that the Subject Vehicle is still experiencing problems that have not been repaired.  (Calef Report, p.3, Exhibit "A".)  Calef based his opinion on being able to verify "some of these problems" and relying on Plaintiffs' assertion that the problems are ongoing. Calef makes broad assertions that are not based in fact and often are only based on "some" of the assertions being verified. This is not an expert opinion at all.   It is simply a plaintiffs' advocate advocating for his party.  This is because Calef never drove the vehicle.

### 3.   The Alleged Problems in the Subject Vehicle are Known Defects.

Calef claims that the alleged problems are "known" defects. (Calef Report, p.3-4, Exhibit "A".) Calef merely asserts, without providing any scientific evidence, that "these conditions have been known to exist . . . since 2009" so BMW NA knew of the "defect". Calef simply asserts the defect is known because he reviewed Plaintiffs' repair orders, the condition of other vehicles he was hired to assert are lemons, and his "experience in the industry."  However, as discussed above, Calef does not have any specialized BMW training nor has he been trained on N63 engines.  His "experience in the industry" is merely another way for him to assert ridiculous non-scientific assertions and pray this Court allows his baseless opinions to be admissible.

Calef claims that there are a series of issues that are problematic with this

vehicle, but admits at deposition that he failed to confirm these problems. (Calef transcript, pp. 32:3-34:6, 36:8-10, Exhibit "C.")

Calef tries to support his opinion with inadmissible hearsay in the form of internet searches, other lawsuits, and a magazine article. Id. at pp. 82:24-84:6, 84:21-85:16. Plaintiffs want to use Calef as conduit for inadmissible materials.

### 4. The Dealer Did Not Make a Reasonable Effort to Diagnose and Repair the Unrepaired Concerns.

Calef then goes on to claim that the repair orders and invoices show that Defendant failed to properly diagnose and repair the subject vehicle. (Calef Report, p.5, Exhibit "A".) Calef simply asserts that because Plaintiffs' concerns could not be duplicated establishes that BMW NA failed to properly diagnose and repair the subject vehicle. Id. However, Calef has not anchored his belief in fact, instead he merely uses this "expert report" as an opportunity to prolificate and chastise BMW NA by claiming that "in most cases" and not relying on THIS case, that "the mechanic did not spend sufficient time and/or used proper diagnostic procedures to find the problem." Id.

### 5. BMW NA Violated the California Bureau of Automotive Repair Regulations.

Calef also claims that BMW NA instructs its dealerships to use practices which violate California Bureau of Automotive Repair regulations. (Calef Report, p.5, Exhibit "A".) This opinion is obviously an attempt by Calef to provide some sort of validity to his baseless opinions; Calef boast that he is a state licensed course instructor under the California Bureau of Automotive Repair. However, Calef conveniently omits that the Bureau of Automotive Repair does not apply to automotive manufactures or distributors and is completely irrelevant to this case and his findings since the dealership is not a party to the suit (the Bureau of Automotive Repair provides guidelines for dealerships specifically).

/ / /

### 6. Defendant Was Given a Reasonable Number of Attempts to Repair the "Problems."

Calef opines that Plaintiffs' gave BMW NA dealerships a reasonable number of attempts to remedy the vehicle's concerns. (Calef Report, p.6, Exhibit "A".) These are opinions as to an ultimate issue of fact, and ones that call for a legal conclusion which Calef is not qualified to give, since he has no legal training. (Calef Report, pp.13-16, Exhibit "A".)  While Federal Rule of Evidence 704 does not mandate exclusion of opinions simply because they embrace ultimate issues of fact, it does not guarantee their admission either.  The admissibility of such an opinion is within this Court's discretion to decide.  See generally, United States v. McCoy, 539 F.2d 1050 (5th Cir. 1976); see also generally, Mut. Life Ins. Co. of N.Y. v. Frost, 164 F.2d 542 (1st Cir. 1947).

### 7. Each of the "Unrepaired Problems" Was Covered Under Defendant's Warranty.

Calef further opines that all of these concerns were covered under warranty because there is no evidence that Plaintiffs' abused, misused, or tampered with the vehicle.  (Calef Report, p.7, Exhibit "A".)  This is a non-sequitur.  There is no allegation of tampering in the case.  This opinion thus has no value and only further demonstrates that this Court should exclude Plaintiffs' expert.

### C. Dan Calef's Testimony

### 1. Normal Oil Consumption for an N63 engine is 2,500 miles.

Calef opined that the normal oil consumption in an N63 engine is one quart every 2,500 miles. However, Calef simply made this number up; there is no quantifiable data to support this opinion. Calef even clearly states that his opinion is not based on any "publish specifications." (See Calef transcript 44:11-17, Exhibit "C".) Instead, Calef based his "expert opinion" on anecdotal evidence from two cars he is being paid to assert are defective.  He provides no information about these cars and they are not identified in his materials.  Obviously, these baseless

opinions are pure conjecture and should be excluded.

Calef further admitted at deposition that he has never seen any testimony from anyone that the normal oil consumption for a BMW N63 engine should be one quart every 2,500 miles.  Id. at pp. 58:23-59:1.  He has nothing in his file to support that normal oil consumption should be one quart every 2,500 miles.  Id. at p. 59:11-15.  In fact, Calef concedes that the N63 oil consumption specification is consistent with other manufacturers including Porsche, Mercedes, and Toyota.  Id. at pp. 46:15-25, 48:6-14, 50:9-16, 50:22-51:12, 52:9-13, 54:5-8, and 55:12-16.

### 2.    There are NO facts to support Calef's oil consumption.

At deposition, Calef claimed there were "likely potential causes" for oil consumption, but has done nothing to test his hypothesis and freely admits there are no facts to support his opinion.  (See Calef transcript, pp. 79:4-81:8; 81:25-82:3, and 88:10-22.  Exhibit "C.")  He simply disagrees with the published oil consumption specification for the subject engine and makes up his own.  Id at pp. 78:7-79:3.  He has never measured the valves or pistons in a N63 engine.  Id. at pp. at 25:17-22 and 26:16-24,

### 3.    Calef improperly offers design defect opinions

Although Calef claims to not be offering opinions on the design, he is essentially doing so by testifying about the effects of the design.  Id at p. 30:3-31:2.  Design opinions are improper in a breach of warranty case.

In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (explained "that an express written warranty covering "materials and workmanship" does not include design defects).

Likewise, the Hon. Andrew J. Gulford recently found that a design defect could not form the basis of the Song-Beverly Act claim in Herber v. Toyota Motor Sales, U.S.A., Inc., et al. (C.D.Cal. 2018) Case No. SACV 16-01525 AG (JCGx), Dkt. 115.

Pages 8 of the Minute Order states in relevant part:

> Defendants argue that the "express warranty does not cover design defects." (Mot., Dkt. No. 82 at 12.) Plaintiffs acknowledge that "the weight of federal authority provides that express warranties do not cover design defects." (Opp'n, Dkt. No. 90-2 at 22.) But Plaintiffs argue that they're not alleging a design defect, just that the soy wiring is itself a "defect in material" under the express warranty because it attracts rodents. "A design defect . . . exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *See McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 111, 1120 (2002).  Here, if Plaintiffs allege a defect at all, they allege a design defect rather than a defect in materials. Plaintiffs allege that the decision to use soy wiring is a problem across the board—not that any individual wire was anomalously defective. The express warranty doesn't cover that kind of defect, so dismissal of the express warranty claims is appropriate.  *See In re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (explaining "that an express written warranty covering "materials and workmanship" does not include design defects).
>
> . . .
>
> Because the repairs they seek aren't covered by the terms of the express warranty, Plaintiffs can't allege that Toyota breached the express warranty by failing to provide or pay for those repairs. Dismissal of the express warranty claim is therefore appropriate.

Other federal courts have reached a similar conclusion denying breach of warranty claims based on an alleged design defect.

In <u>Cali v. Chrysler Group LLC</u>, WL 383952 (2011), the United States District Court for the Southern District of New York granted Chrysler Group LLC's motion to dismiss plaintiff's action based upon breach of express warranty pursuant to the Magnuson Moss Warranty Act and breach of implied warranty. The plaintiff alleged that his vehicle had defective brakes as a result of a design defect.  The District Court held that plaintiff's breach of express warranty claims failed because Chrysler's basic Limited Warranty covered only defects in material,

workmanship or factory preparation, not defects in the design of the vehicle. (p. 2)

In <u>Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC</u>, No. 14-CV-02349-TEH, 2015 WL 5138080 (N.D. Cal. Sept. 1, 2015), the court said:

> "Consequently, insofar as Robles claims a breach of express warranty because of a design defect in the AC unit, . . . his claim fails as a matter of California law. . . . (warranty covers 'defects in material, workmanship or factory preparation'); Bros v. Hewlett-Packard Co., 2007 WL 485979, at *4 (N.D. Cal., Feb. 12, 2007) (finding that, under California law, a warranty that guarantees against defects in 'materials and workmanship' does not guarantee against design defects.')

In <u>Nelson v. Nissan North America, Inc.</u>, WL 7331922 (2014) (D. New Jersey), the court said:

> "The Ninth Circuit, applying California law, has explicitly held, '[i]n California, express warranties covering defects in materials and workmanship exclude defects in design.' <u>Troup v. Toyota Motor Corp.</u>, 545 F.App'x 668, 668 (9th Cir. 2013)(citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d 118 (2006)"

> * * *

> "Additionally, as the Third Circuit has observed in a somewhat analogous case, absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials.:"

> * * *

> "Other Courts of Appeal have also held that design defect claims do not fall within the scope of an express warranty against defects in materials or workmanship. *See* Bruce Martin Constr., Inc. v. CTB, Inc., 735 F.3d 750 (8th Cir. 2013); <u>Voelker v. Porsche Cars N. Am., Inc.</u> 353 F.3d 516 (7th Cir. 2003)."

In <u>Whitt v. Mazda Motor of America, Inc.</u>, WL 2520147 (2011)(Court of Appeal Ohio), the court said,

> "The trial court found the warranty did not cover claims of design defects. . . To reiterate, Ohio's Lemon Law requires manufacturers to honor a new motor vehicle's express warranty by making any repairs necessary to confirm the vehicle to the warranty. The problems about which Appellants complained [design defects] did not fall within the applicable expressed warranty on the vehicle. Accordingly, we find the trial court did not err in finding [that the lemon law] did not apply and did not err in granting summary judgment in favor of Appellee on this issue."

Several other cases join in the conclusion that express warranties covering materials in workmanship do not include design defects. Rice v. Sunbeam Products, Inc., WL 146270 at *12 (C.D. Cal. 2013) (2013); Horvath v. LG Electronics Mobilecomm U.S.A., Inc., WL 2861160 (S.D. Cal.) at *5 (2012); Cali v. Chrysler Group, LLC, WL 383952 (2011) (S.D. New York).

## III.   ARGUMENT

### A.   Applicable Law

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002). Application of Rule 702 is guided by U.S. Supreme Court precedent. Id.. In Daubert, 509 U.S. 579, the Supreme Court "charged trial judges with the responsibility of acting as gatekeepers" to exclude unreliable expert testimony. Daubert, 509 U.S. at 597; Finley, 301 F.3d at 1008; United States v. Hermanek, 289 F.3d 1076, 1093 (9th Cir. 2002). This gatekeeping role applies to all expert testimony, not just scientific testimony. Kumho Tire Co., 526 U.S. at 147.

As part of that duty, the trial judge must engage in a two-step inquiry that examines the expert's testimony for both (1) reliability, and (2) relevance. Daubert, 509 U.S. at 589; United States v. Mendoza-Paz, 286 F.3d 1104, 1112 (9th Cir. 2002); Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001); United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000). Thus, with the 2000 amendments to Rule 702, the Federal Rules of Evidence mandate that a proposed expert's testimony be:

1.   Based upon sufficient facts or data;
2.   The product of reliable principles and methods; and
3.   The witness has reliably applied the principles and methods to the case.

The reliability determination is made by first assessing whether the reasoning or methodology underlying the proposed testimony is scientifically valid. Daubert, 509 U.S. 592-593. The factors bearing on this assessment,

include:

1. Whether the theory or technique can be and has been tested;
2. Whether the theory or technique has been subjected to peer review and publication;
3. Whether the known or potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; and,
4. Whether the theory or technique has been generally accepted in the particular field.

Some circuits, including the Ninth Circuit, have also added a fifth factor, namely,

> "whether the experts are proposing to testify about matters growing naturally and directly out of the research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand) ("(W)e may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."); Smelser v. Norfolk Southern Railway Co., 105 F.3d 299, 303 (6th Cir. 1997). This additional factor is important because research conducted independent of litigation "provides important objective proof that the research comports with the dictates of good science." Smelser, 105 F.3d at 303.

The court must also ensure that the proffered testimony is "relevant to the task at hand." Daubert, 43 F.3d at 1315. This is what the Daubert court called the "fit" requirement and it directs the court to make a preliminary finding that the proposed expert is qualified by reason of his or her knowledge, skill, experience, training or education to testify on the subject matter of his proposed testimony.

Because Plaintiffs' expert does not satisfy any of the criteria imposed by Rule 702 or Daubert, his testimony must be excluded.

## B.   Calef Is Not Qualified to Testify as An Expert In This Case

While Rule 702 "contemplates a broad conception of expert qualifications," the expert must still possess some sort of "knowledge, skill, experience, training, or education" beyond that of a lay person *that pertain to the opinions offered.*

1 | Thomas v. Newton Int'l Enterprises, 42 F.3d 1266, 1269 (9th Cir. 1994). Expert
2 | testimony only assists the trier of fact when it provides information beyond the
3 | common knowledge of the trier of fact or average layperson on the specific issue at
4 | hand. Daubert, 509 U.S. at 591; Finley, 301 F.3d at 1008;

5 | Calef lacks the professional experience, education and training to render any
6 | design and liability/causation opinions. Calef admits he has no actual training or
7 | experience specific to the Subject Vehicle, nor does he have any information as to
8 | how the dealership performs its work. Indeed, he freely conflates this case with his
9 | experiences working on cars from *other manufacturers*. He has not conducted a
10 | single test of his own to confirm any of his hypotheses, and he openly dismisses
11 | the scientific method as having nothing to do with this case.

12 | To provide sufficient foundation, an expert must demonstrate familiarity
13 | with the subject of the testimony. Calef's general automotive background does not
14 | qualify him to testify on all matters related to every vehicle's design and function.
15 | As his resume and testimony demonstrate, his focus has been on general
16 | automotive repair and advocating for lemon law plaintiffs.

17 | In simplest terms, Calef is not qualified to render the opinions he intends to
18 | offer in this case. He is a plaintiffs' "hired gun" that proposes to render opinions
19 | developed expressly for litigation purposes. Nothing about his opinions grow
20 | naturally and directly out of the research conducted independent of the litigation,
21 | especially here where he has conducted none. See, Daubert, 43 F.3d at 1315.
22 | Accordingly, Calef's testimony should be excluded.

23 | **C.    Calef's Opinions Are Unreliable and Should Be Excluded**

24 | Of the five possible indices of validity identified by the Supreme Court in
25 | Daubert, courts generally appear to treat the presence or lack of adequate testing by
26 | the expert as a primary consideration. Claar v. Burlington N. R. Co., 29 F.3d 499
27 | (9th Cir. 1994). This is because testing is the core of the scientific method, which
28 | involves "generating hypotheses and testing them to see if they can be falsified."

1   <u>Daubert</u> 509 U.S. at 593.  The hypotheses, in turn, derive from "knowledge," which

2   is "more than subjective belief or unsupported speculation."   Accordingly, the

3   testing mandated by the scientific method provides an objective standard by which

4   to judge an opinion's reliability.  As stated by the court in <u>Claar</u>:

> Scientists whose conviction about the ultimate
> conclusion of their research is so firm that they are
> willing to aver under oath that it is correct prior to
> performing the necessary validating tests could properly
> be viewed . . . as lacking the objectivity that is the
> hallmark of the scientific method.

9   <u>Claar</u>, 29 F.3d at 503.

10   Calef's opinions rest merely upon his own subjective belief and unsupported

11   speculation, rather than "scientific knowledge . . . derived by the scientific

12   method," they fail to satisfy any of the <u>Daubert</u> criteria and are wholly unreliable.

13   <u>Daubert</u>, 509 U.S. at 590.   Furthermore, an opinion that not only lacks factual

14   support but is flat-out wrong cannot possibly assist the jury and must be excluded

15   by this Court.

### 1.   <u>Calef's Relies on "Confidential Documents" but Refused to identify or produce these crucial documents.</u>

18   Calif claims that he based his opinions on a set of confidential documents he

19   received in another lawsuit.  (See Calef transcript 67:21-69:21.)  He refuses to state

20   what the documents are or even what the documents pertain to.   <u>Id.</u> "[T]he

21   majority view [is] that Rule 26 now requires disclosure of all information provided

22   to testifying experts," including privileged or confidential documents. <u>Reg'l Airport</u>

23   <u>Auth. of Louisville v. LFG, LLC</u>, 460 F.3d 697, 715 (6th Cir. 2006); accord <u>In re</u>

24   <u>Pioneer Hi-Bred Int'l, Inc.</u>, 238 F.3d 1370, 1375 (Fed. Cir. 2001); see also

25   Advisory Comm. Note to 1993 Amendments to Fed. R. Civ. P. 26(a)(2).  Calef's

26   failure to properly disclose these documents violates Rule 26.   All of Calef's

27   opinions should be excluded based on the simple fact that he failed to comply with

28   Rule 26.

### 2. **Calef's Opinions are Not Based on Reliable Principles and Methods.**

Calef cannot be accepted as an expert by this Court because he fails to base his opinions on reliable principals and methods. Instead, Calef flippantly cites to "magazines" that is the product of a pro consumer advocacy group. (Calef transcript 84:21-85:13.)  Calef goes on to say that he performed an internet search and considered the unverified non-peer reviewed comments and used that as the bases of his conclusions. Id.  He also goes on to allude that a class action lawsuit that did not result in a judgment against either party is proof that Plaintiffs vehicle is proof that the alleged "problems were known." Id.  Since none of these opinions are based in reliable principals or methods the Court should exclude Calef's testimony in its entirety.

### IV. **CONCLUSION**

Based upon the foregoing points and authorities, BMW NA respectfully requests that this motion be granted, and that Calef be excluded from testifying. Calef never even drove the subject vehicle nor did he do any scientific research, he lacks the evidentiary support for his speculative opinions.  Calef is no expert and he should be excluded from testifying.

DATED: August 15, 2018                    BOWMAN AND BROOKE LLP


                                BY:    */s/  Amanda S. Depuy*
                                       Brian Takahashi
                                       Richard L. Stuhlbarg
                                       Corinne D. Orquiola
                                       Amanda S. Depuy
                                       Attorneys for Defendant
                                       BMW OF NORTH AMERICA, LLC

## DECLARATION OF AMANDA S. DEPUY

I, Amanda S. Depuy, declare that:

1.      I am an attorney at law, duly licensed to practice before all the courts of the State of California and the Central District Court. I am an attorney at the law offices of Bowman and Brooke LLP, counsel of record for BMW OF NORTH AMERICA, LLC ("BMW NA"). The facts set forth in this Declaration are made of my own personal knowledge, and if called upon to testify I could and would competently testify thereto.

2.      BMW NA meet and confered with Plaintiff on July 30, 2018. After corresponding with BMW NA's counsel, Plaintiff's Counsel disagreed with BMW NA's position and offered to stipulate that Dan Calef would not refer to the undisclosed documents he relied on. However, the stipulation was insufficient since it did not address the numerous issues with Mr. Calef's testimony. BMW NA had no other option then to file this Motion. A true and correct copy of the meet and confer correspondence is attached hereto as Exhibit C.

3.      Dan Calef submitted his expert report in Plaintiffs Fed. R. Civ. P. 26(1)(2) disclosures. A true and correct copy of that report is attached hereto as Exhibit A. He was deposed and a true and correct copy of the report is attached hereto as Exhibit B.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of August 2018, at Torrance, California

/s/ *Amanda S. Depuy*
Amanda S. Depuy

1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2018, I filed the foregoing document entitled **DEFENDANT BMW OF NORTH AMERICA'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' EXPERT DAN CALEF; DECLARATION OF AMANDA S. DEPUY** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

*/s/ Amanda S. Depuy*
Amanda S. Depuy